## IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

MATTHEW D. GUERTIN

                      Appellant,

    v.

HENNEPIN COUNTY, a municipal entity;

KEITH ELLISON, in his official
capacity as Minnesota Attorney General;

MARY MORIARTY, in her official
capacity as Hennepin County Attorney;

CHELA GUZMAN-WEIGART, in her
official capacity as Assistant County
Administrator for Law, Safety, and Justice;

JULIA DAYTON-KLEIN, in her
individual capacity;

GEORGE F. BORER, in his
individual capacity;

DANIELLE C. MERCURIO, in her
individual capacity;

DR. JILL ROGSTAD, in her official
capacity as Senior Clinical Forensic
Psychologist in the Fourth Judicial District;

DR. ADAM MILZ, in his official capacity
with Hennepin County Mental Health;

JACQUELINE PEREZ, in her
official capacity as Assistant Hennepin
County Attorney;

BRUCE M. RIVERS, in his
individual capacity.

                      Appellees.

Case No: 24-2662

**APPELLANT'S MOTION FOR
INITIAL EN BANC REVIEW**

## I. INTRODUCTION

1.    Appellant Matthew Guertin respectfully moves this Honorable Court for an initial en banc review of his appeal. This request is based on extraordinary and unprecedented circumstances surrounding his case, which involve profound implications for the integrity of the judicial system, substantial constitutional violations, and issues of significant public importance.

## II. GROUNDS FOR EN BANC REVIEW

2.       The extraordinary and unprecedented nature of this case warrants an initial en banc review, a procedure reserved for matters of exceptional public importance, novel legal questions, and cases with significant implications beyond the immediate parties involved. In evaluating whether to grant an en banc review at this stage, the following elements are particularly compelling and relevant:

### A. Unprecedented Nature and Public Importance

3.       This case involves unprecedented issues that go beyond the typical scope of appellate review. The involvement of advanced AI-generated fraudulent discovery materials, collusion between defense counsel, the prosecution, and external entities, and the theft of a patent from the United States Patent and Trademark Office (USPTO) are matters that not only affect the immediate parties but also have broader implications for the integrity of the judicial system and public trust in federal institutions asa whole.

4.       As noted in En Banc Procedure in the Federal Courts of Appeals, "The en banc procedure, although otherwise useful as a means of bringing particularly important issues to the attention of more judges, was developed for the resolution of intracircuit conflict." However, the same procedure is also appropriate for cases of significant public importance, where the issues at hand transcend the interests of the parties involved and impact broader societal concerns (*111 U. Pa. L. Rev. 220, 223*)[1].

---

1   *Editors En Banc Procedure in the Federal Courts of Appeals , 111 U. Pa. L. Rev. 220 (1962)*
    Source - https://scholarship.law.upenn.edu/penn_law_review/vol111/iss2/5/

**B. Complex and Novel Legal Issues**

5.　　The legal questions raised by this case are not only complex but also novel. The use of AI in the manipulation of evidence presents an entirely new challenge for the courts, one that requires careful consideration by the full bench to ensure that the legal standards applied are both current and robust. This aligns with the broader purpose of en banc review as a mechanism to address "cases that present novel issues or be one which, if left with the panel, might result in inconsistent decisions within the circuit" (*111 U. Pa. L. Rev. 220, 226*).

**C. Substantial Financial and Economic Implications**

6.　　The financial stakes in this case are extraordinarily high, with the estimated conservative value of the Appellant's U.S. Patent No. 11,577,177 exceeding many billions of dollars over a twenty-year period. The theft of such a valuable patent and the subsequent legal disputes surrounding it have significant economic implications that extend far beyond the immediate parties. As observed in Redefining En Banc Review in the Federal Courts of Appeals, cases involving "large sums of money" and substantial economic impacts often warrant en banc consideration due to the broader effects of the court's decision (*82 Fordham L. Rev. 2001, 2012*)[2].

**D. Integrity of the Judicial System**

7.　　At the heart of this case is the integrity of the judicial system itself. The allegations of judicial misconduct, fraudulent evidence, and the potential involvement of defense counsel in a conspiracy against the appellant are issues that strike at the core of the legal process.

---

2　*Alexandra Sadinsky, Redefining En Banc Review in the Federal Courts of Appeals, 82 Fordham L. Rev. 2001 (2014)*
　　Source - https://ir.lawnet.fordham.edu/flr/vol82/iss4/9/

8.      The en banc review process is particularly suited for cases where the integrity of the judiciary is in question, as it allows for a thorough and comprehensive examination by all active judges in the circuit, ensuring that justice is not only done but is seen to be done (*82 Fordham L. Rev. 2001, 2010*).

**E.  Potential to Set Precedent**

9.      The issues presented in this case have the potential to set important legal precedents, particularly concerning the use of AI in legal proceedings, the protection of intellectual property, and the standards for judicial conduct. Given the potential for this case to shape future jurisprudence in these critical areas, it is imperative that the full court considers these issues en banc to ensure that the resulting precedent is well-reasoned and authoritative.

**F.  Conclusion**

10.     The combination of the unprecedented nature of the case, its public importance, the novel legal questions it raises, the substantial financial implications, and the critical concerns regarding judicial integrity, all strongly support the need for an initial en banc review. This will ensure that these profound issues are addressed with the full consideration they deserve, reflecting the gravity of the case and its broader implications for the legal system and society as a whole.

## III.  BACKGROUND

11.     This case presents a series of unprecedented and profoundly concerning issues that warrant an initial en banc review by the 8th Circuit Court of Appeals. The lower courts, including the Minnesota Court of Appeals and the MN Federal District Court, have consistently

failed to address the substantial evidence and serious allegations raised by the appellant, Matthew Guertin.

12.     Instead, these courts have engaged in a pattern of intentional misrepresentation and containment of the case, focusing on portraying Guertin as mentally incompetent rather than engaging with the irrefutable evidence he has presented. The key elements of this case, outlined below, highlight the need for a full court review to ensure justice and maintain the integrity of the judicial process.

## IV.   COORDINATED JUDICIAL MISCONDUCT AND SYSTEMATIC IGNORING OF SUBSTANTIAL ISSUES

13.     The Minnesota Court of Appeals and the MN Federal District Court have repeatedly ignored the core issues raised by Guertin, including clear evidence of patent theft, fraudulent discovery materials, and external influences involved in the the judicial process. Instead of addressing these critical concerns, the courts have systematically repackaged the case to portray Guertin as mentally incompetent, thereby sidestepping the critical arguments and evidence central to his claims. This pattern of behavior suggests a coordinated effort to contain the substantial issues at hand, raising serious concerns about judicial impartiality and integrity.

14.     The July 16, 2024, order denying Guertin's TRO exemplifies this intentional misrepresentation. The order focuses on procedural aspects while completely ignoring the unprecedented nature of the issues raised, including the theft of a high-value patent and the use of advanced AI technology to manipulate evidence. The courts' actions appear to be deliberately aimed at discrediting Guertin through portrayals of mental incompetence, rather than addressing the serious legal and constitutional violations he has identified. The consistent failure to engage

with the substantial evidence provided suggests that external pressures or biases may be influencing the judicial process.

## V.   FRAUDULENT DISCOVERY MATERIALS AND MANIPULATION USING ADVANCED AI TECHNOLOGY

15.    The issue of fraudulent discovery materials is central to this case and highlights the unprecedented nature of the conspiracy against Guertin:

### A.   Initial Discovery and Manipulation:

16.    On January 5, 2024, Guertin, representing himself pro se, filed his first court motion—a request for the original discovery materials after identifying manipulation in the initial set provided by Michael Biglow on August 3, 2023. Notably, this manipulated discovery was also provided to the psychological examiner, Dr. Adam Milz, who based his psychological evaluation on these fraudulent materials. This tainted exam led to a recommendation for Guertin's civil commitment, further entrenching the false narrative of his mental incompetence.

### B.   Motion to Compel Discovery and Affidavit of Fact:

17.    On April 4, 2024, Guertin officially submitted his "Motion to Compel Discovery and Affidavit of Fact," which included a forensic analysis proving the manipulation of the initial discovery materials. Despite the substantial evidence of fraud, this motion was ignored by the court. Even after Guertin highlighted these issues in his Minnesota Court of Appeals case A24-0780, they were disregarded in both the final decision and the state's response. This evidence was served directly upon both the Minnesota Attorney General's Office and the Hennepin County Attorney's Office, making it impossible for them to claim ignorance of the fraudulent discovery.

**C.  Second Set of Discovery:**

18.     Following his July 16, 2024, hearing, Guertin finally received a second set of discovery materials from Guertin's defense counsel, Bruce Rivers. These materials, if authentic, would have been in Rivers' possession since March 2023. However, the second set of discovery reveals a direct connection between Rivers and the prosecution, as the 28 images Guertin identified as cropped in the initial discovery are all missing from the second set. The probability of this occurring by chance is astronomical, further implicating Rivers in the conspiracy against Guertin.

**D.  Court's Refusal to Address the Issue:**

19.     Despite presenting irrefutable evidence of the discovery fraud, the court has continuously ignored the issue. When Guertin confronted Rivers with the evidence, Rivers ceased communication but still refused to withdraw as Guertin's defense counsel, even after multiple requests and a pro se motion for substitute counsel filed by Guertin. Rivers' refusal to withdraw despite a clear conflict of interest underscores the depth of the conspiracy against Guertin.

**E.  Rule 20 Exam Report:**

20.     The January 2024 Rule 20 exam report, finally provided to Guertin by Rivers, reveals that Dr. Milz used Guertin's legitimate concerns about fraudulent discovery materials as evidence to support the false claim that Guertin was psychotic. This report further recommended that Guertin be placed on powerful antipsychotics, continuing the narrative of mental incompetence based on manipulated evidence.

# VI.   THE MILITARY AND GOVERNMENT CONNECTION

## A.   LinkedIn Search Graph and National Security Implications

21.     Guertin's analysis of LinkedIn search data reveals a deeply troubling connection between his patent and various military, governmental, and defense contractor entities. This analysis, conducted nearly a year after the origination of his criminal charges, serves to substantiate his concerns about the involvement of powerful entities in the conspiracy against him:

## B.   LinkedIn Search Analysis:

22.     Guertin's LinkedIn search graph, compiled from automated emails, shows a significant pattern of searches by military and government entities that align perfectly with key events in his life, including the filing of his provisional and full patent applications. Notably, these searches began long before Guertin's patent was published and should have remained confidential. The correlation between these searches and Guertin's legal troubles suggests a coordinated effort to monitor and undermine his work.

## C.   Military Training Simulations:

23.     Guertin's patent has vast implications in the field of military training simulations, a fact that adds further weight to the significance of the LinkedIn search data. The involvement of military and defense contractors in searching for Guertin's profile, combined with the financial stakes of his patent, strongly suggests that his invention has attracted attention from entities with significant resources and influence.

**D. Post-Facto Validation of Bruce Rivers' Comment:**

24.     Guertin's LinkedIn analysis provides compelling post-facto validation of Bruce Rivers' comment about "powerful people" keeping an eye on him. The alignment of these searches with Guertin's life events, combined with the vast implications of his patent, supports the argument that external forces are involved in the conspiracy against him.

**E. Cross-Linked Entities:**

25.     The cross-linking of entities involved in the LinkedIn searches, including those directly connected to Netflix and military contractors, further supports the argument that Guertin's invention is of significant interest to powerful entities. This evidence, combined with the timeline of events, suggests that the conspiracy against Guertin is far more extensive and coordinated than initially believed.

## VII.   THEFT OF U.S. PATENT NO. 11,577,177 AND ITS BROADER ECONOMIC IMPLICATIONS

26.     The theft of Guertin's U.S. Patent No. 11,577,177, directly involving the United States Patent and Trademark Office (USPTO), is at the heart of this case. The estimated value of this patent over a twenty-year period exceeds many billions of dollars, underscoring the significant financial stakes involved.

27.     The financial incentives related to the stolen patent provide a clear motive for the coordinated efforts to undermine Guertin's credibility and discredit his claims. The involvement of major corporations and high-level entities in this theft further emphasizes the broader economic and legal implications of the case.

28.     Additionally, Netflix's U.S. Patent No. 11,810,254, granted on November 7, 2023, lists Guertin's name and U.S. Patent No. 11,577,177 at the very top, validating Guertin's claims

about the connection between his invention and Netflix. This acknowledgment, resulting from Guertin's successful third-party prior art submission, further undermines the narrative that Guertin's claims were delusional and supports the credibility of his assertions about the broader conspiracy against him.

## VIII.   FRAUDULENT EXAM REPORTS AND ATTEMPTS TO UNJUSTLY COMMIT GUERTIN TO A MENTAL INSTITUTION

29.    A central aspect of the conspiracy against Guertin involves the creation and use of fraudulent exam reports, which were manipulated to falsely portray him as mentally incompetent with the ultimate goal of committing him to a mental institution.

30.    These reports not only misrepresent the facts but also twist Guertin's reasonable and verifiable claims into a narrative of delusion, thus undermining his credibility and the substantial evidence he has provided regarding patent theft, fraudulent discovery, and judicial misconduct.

The fraudulent nature of these reports is evident in their blatant misrepresentations and omissions:

### A.   False Statements and Twisted Narratives:

31.    The reports contain numerous blatantly false statements, such as claims that Guertin has a history of threatening self-harm and suicidal ideations, which are entirely untrue. Moreover, Guertin's legitimate claims about his career accomplishments, including his engineering background and his role in high-profile projects, were not only omitted but were twisted into evidence of supposed delusions.

32.     For instance, his truthful claim of being an engineer was used against him, suggesting that he was grandiose and making false statements, despite the fact that his professional background was the first thing he provided to Dr. Jill Rogstad in his first ever email to her in which he included a link to his portfolio site [www.MattGuertin.com](www.MattGuertin.com), as well as a very detailed, and rational presentation of the many issue involving his patent, Netflix, the financial implications involved, along with a detailed, and direct mention of his significant personal accomplishments prior to the origination of his criminal charges and current involvement within the courts.

**B.  Omission of Critical Evidence:**

33.     The reports also completely omitted crucial documents that would have provided context and supported Guertin's claims. Notably, the January 12, 2023 police report, which contains significant background information relevant to the series of events leading up to the incident where Guertin fired a gun into the air to attract police attention, was never mentioned, even though it was listed as a "reviewed material." This omission is a clear attempt to present a one-sided narrative that supports the goal of discrediting Guertin.

**C.  Misrepresentation of Guertin's Honesty:**

34.     Guertin's upfront and candid admissions, such as his acknowledgment of having tried "every  drug except heroin" during his life, was misrepresented in the January 2024 Rule 20 exam report to create a false narrative of a problematic history of substance abuse involving "every drug except heroin." This misrepresentation of Guertin's honesty further illustrates the deceptive nature of the reports.

**D.  Manipulation of Discovery Materials:**

35.     Importantly, the first set of fraudulent discovery materials, which were later proven to be manipulated, were provided to the psychological examiner who conducted Guertin's civil commitment examination. The examiner, Dr. Michael Robert's, relied on these manipulated materials to produce his report. This fraudulent use of manipulated evidence underscores the broader strategy to unjustly commit Guertin and discredit his legitimate claims.

36.     These fraudulent reports represent a grave violation of Guertin's constitutional rights, including his right to due process and protection against unwarranted governmental interference in his personal liberties. The use of such blatantly false and manipulated reports to justify involuntary commitment, and forced administration of powerful antipsychotic drugs, is a severe abuse of the legal process, and highlights the urgent need for en banc review to address these serious violations and prevent such abuses from occurring in the future.

## IX.   CONFLICTS AND REFUSAL TO WITHDRAW: THE ROLE OF DEFENSE COUNSEL BRUCE RIVERS

37.     The involvement of Bruce Rivers as Guertin's defense counsel presents a deeply troubling conflict of interest and a severe breach of professional responsibility, all of which have had profoundly negative implications for Guertin's case. Despite repeated and substantiated requests from Guertin for Rivers to withdraw, Rivers has not only refused but has also engaged in actions that appear to support the false narrative of Guertin's supposed incompetence.

38.     This refusal to withdraw, coupled with the court's failure to address Guertin's pro se motion for substitute counsel, raises serious concerns about the integrity of the legal process and the protection of Guertin's constitutional rights.

**A. Ineffective Assistance and Conflicts of Interest**

39.     Guertin's longstanding relationship with Bruce Rivers, dating back 25 years, initially led him to retain Rivers based on his reputation and past performance as a defense attorney. However, despite Guertin's competence in selecting Rivers as his attorney, Rivers has failed in numerous critical aspects of his defense:

**a. Failure to Provide Discovery Materials:**

Rivers failed to deliver critical discovery materials, including the January 2024 psychological examination report, despite multiple requests from Guertin. This omission constitutes a significant breach of duty, impeding Guertin's ability to prepare an adequate defense.

**b. Misleading Advice:**

Rivers advised Guertin against presenting key evidence at the July 7, 2023, court hearing, directly preventing the court from considering crucial information. This advice fell below the standard of reasonable legal representation and may have altered the outcome of the proceedings.

**c. Conflict of Interest:**

Guertin has repeatedly expressed concerns about a conflict of interest due to Rivers' connections, including his YouTube channel and previous comments about "powerful people" influencing the case. These concerns were never adequately addressed, further compromising Rivers' ability to effectively represent Guertin.

**B. Refusal to Withdraw and Court's Inaction**

40.     Guertin has made multiple direct requests for Rivers to withdraw as his defense counsel due to the clear conflict of interest and Rivers' ineffective representation. Despite these requests, Rivers has refused to withdraw, even after being officially served with the August 7, 2024, motion, which detailed the substantial issues at hand.

41.     The Hennepin County Court has also failed to address Guertin's pro se motion for substitute counsel, submitted to detail these issues and request a new, impartial defense attorney. The court's refusal to engage with this motion is particularly concerning given the irrefutable evidence provided by Guertin, including forensic analyses proving discovery fraud and clear indications of Rivers' involvement in undermining Guertin's defense.

**C. Rivers' Complicity in Supporting the False Narrative of Incompetence**

42.     Rather than challenging the false narrative of Guertin's incompetence, Rivers has effectively supported it by:

**a. Ignoring Forensic Evidence of Discovery Fraud:**

Guertin directly presented Rivers with the forensic analysis proving the manipulation of the discovery materials provided to him. Despite this, Rivers ceased communication with Guertin and refused to address the issue in court, further entrenching the false narrative.

**b. Pushing for a Third Rule 20 Exam:**

Instead of advocating for a competency hearing, as Guertin suggested, Rivers has been pushing for a third Rule 20 exam. This action is particularly egregious given

the blatantly deceptive nature of the previous exams and the irrefutable evidence
of fraud presented by Guertin.

    **c.**   **Failure to Withdraw Despite Clear Conflict:**

Even after being served with the August 7 motion and the corresponding evidence
list, which detailed Guertin's demands and the substantial issues involved, Rivers
has refused to withdraw, continuing to act as Guertin's compromised defense
counsel. This is a blatant violation of legal and ethical standards, particularly
concerning an attorney's obligation to their client.

**D.  Broader Implications and the Need for En Banc Review**

43.    The continued involvement of Bruce Rivers as Guertin's defense counsel, despite
clear conflicts of interest and substantial evidence of his complicity in undermining Guertin's
defense, presents an unprecedented challenge to the integrity of the judicial process. Rivers'
refusal to withdraw, even in the face of overwhelming evidence of ineffective assistance and
conflict of interest, not only jeopardizes Guertin's right to a fair trial but also raises serious
concerns about the broader implications for the legal system as a whole.

44.    The failure of the lower courts to address Guertin's pro se motion and the blatant
disregard for these critical issues further underscores the need for an en banc review. This case
transcends the usual boundaries of judicial oversight, requiring the full attention of the 8th
Circuit Court of Appeals to ensure that justice is not only done but is seen to be done.

45.    The actions of Bruce Rivers, combined with the inaction of the courts, demand an
extraordinary response to preserve the fundamental principles of fairness and due process that

are at the core of our legal system. An en banc review is essential to address these unprecedented challenges and to restore confidence in the judicial process.

## X.   CONCLUSION

46.     The combination of these unprecedented elements - including coordinated judicial misconduct, fraudulent exam reports used to portray Guertin as mentally incompetent, the systemic ignoring of substantial and irrefutable evidence, collusion between defense counsel and external entities, fraudulent manipulation of discovery materials, and the theft of a highly valuable patent with vast military and economic implications - strongly supports the need for an initial en banc review.

47.     The actions of the lower courts, which have consistently misrepresented the facts and failed to engage with the serious issues presented, suggest a pattern of intentional containment of the case, possibly influenced by external pressures. This coordinated effort to discredit Guertin and suppress the truth raises profound concerns about judicial impartiality and the fair administration of justice.

48.     An initial en banc review is essential not only to address the significant legal and constitutional violations in this case but also to restore confidence in the integrity of the judicial process. Such a review will ensure that justice is served and that the legal system upholds its duty to protect the rights of all individuals, regardless of the power and influence of those involved.

# XI.  PRAYER FOR RELIEF

WHEREFORE, Appellant Matthew Guertin respectfully requests that this Honorable Court grant the following relief:

    a.   Grant Initial En Banc Review:

        Due to the unprecedented nature of the issues presented, including coordinated judicial misconduct, fraudulent exam reports, manipulation of discovery materials using advanced AI technology, and the theft of a highly valuable U.S. patent, Appellant requests an initial en banc review of this appeal.

    b.   Vacate Lower Court Orders:

        Appellant requests that the Court vacate all orders and judgments issued by the lower courts that were based on, or influenced by, fraudulent evidence, judicial misconduct, or actions that violated Appellant's constitutional rights.

    c.   Remand for Further Proceedings:

        Appellant requests that the Court remand the case to the district court for further proceedings, with specific instructions to address the substantial evidence of fraud, misconduct, and constitutional violations, ensuring that Appellant receives a fair trial with unbiased representation.

    d.   Reconsideration of Defense Counsel:

        Appellant requests that the Court order the district court to reconsider the appointment of defense counsel, due to the documented conflict of interest and

ineffective assistance provided by Bruce Rivers, thereby ensuring that Appellant's right to a fair trial is protected.

e. Award Such Other Relief as the Court Deems Just and Proper:

Appellant requests any additional relief that this Court finds just and equitable under the circumstances, including, but not limited to, measures to safeguard the integrity of the judicial process and protect the rights of all parties involved.

Dated: August 22, 2024                   Respectfully submitted,

*/s/ Matthew D. Guertin*

Matthew David Guertin
Pro Se Appellant
1075 Traditions Ct.
Chaska, MN  55318
Telephone: 763-221-4540
MattGuertin@protonmail.com
www.MattGuertin.com

# XII. CERTIFICATE OF COMPLIANCE

I, Matthew D. Guertin, certify that this document complies with the type-volume limitation set forth in Federal Rule of Appellate Procedure 32(a)(7)(B). The word count of this document is 3,881 words, excluding the parts of the document exempted by Rule 32(f), which includes the caption, signature block, the certificate of verification, this certificate of compliance, and the proof of service section. The word count is within the limit set by the rules.

Dated:  August 22, 2024

Respectfully submitted,

  */s/ Matthew D. Guertin*

Matthew David Guertin
Pro Se Appellant
1075 Traditions Ct.
Chaska, MN  55318
Telephone: 763-221-4540
MattGuertin@protonmail.com
www.MattGuertin.com

## XIII.   CERTIFICATE OF VERIFICATION

I, Matthew D. Guertin, under penalty of perjury, hereby certify that the statements of fact and content contained within this motion are true and correct to the best of my knowledge, information, and belief. I further declare that the information contained within this motion was personally prepared and compiled by me as the pro se Appellant in this case.

Dated:  August 22, 2024

Respectfully submitted,

 */s/ Matthew D. Guertin*

Matthew David Guertin
Pro Se Appellant
1075 Traditions Ct.
Chaska, MN  55318
Telephone: 763-221-4540
MattGuertin@protonmail.com
www.MattGuertin.com

## XIV.   PROOF OF SERVICE

I, Matthew D. Guertin, County of Carver, in the State of Minnesota, certify that on August 22, 2024, I served a copy of the APPELLANT'S MOTION FOR INITIAL EN BANC REVIEW on the following Appellees, via the method indicated below:

For Appellees Hennepin County, Mary Moriarty, Chela Guzman-Weigart, and Jacqueline Perez:

**Jamil M. F. Masroujeh**

Assistant County Attorney

2000A Government Center, MC200

300 South Sixth Street

Minneapolis, MN 55487

**Method of Service:** Electronic Service via ECF

For Appellees Keith Ellison, Julia Dayton-Klein, George F. Borer, Danielle C. Mercurio, Dr. Jill Rogstad, and Dr. Adam Milz:

**Benjamin W. Harringa**

Assistant Attorney General

445 Minnesota Street, Suite 1400

St. Paul, MN 55101-2131

**Method of Service:** Electronic Service via ECF

Dated:  August 22, 2024

Respectfully submitted,

 /s/ Matthew D. Guertin

Matthew David Guertin
Pro Se Appellant
1075 Traditions Ct.
Chaska, MN  55318
Telephone: 763-221-4540
MattGuertin@protonmail.com
www.MattGuertin.com